Good morning, your honors. May it please the court, counsel, my name is David Partovi, represent Domingo Valdovinos in this appeal from a conviction after a jury trial in the Eastern District of Washington. Mr. Valdovinos is doing life and he was in his 20s when he was sentenced and the case is a very difficult case factually but it is his assertion before the court today that he needed and should have been provided the benefit of the testimony of Jesse Coughlin primarily. Secondarily, the issue of duress I think has been sufficiently briefed. Let me focus on the Coughlin testimony because that's what you say you want to focus on. With respect, there's there are two witnesses that you claim you should have been able to impeach with that testimony and I'm gonna get their names wrong so you'll correct me. Dylan Castile and Melissa Buhite. Right, so let's take Castile. How was Coughlin's testimony admissible to impeach Castile? He was not testifying about anything that Castile said so as to Castile, his testimony was pure hearsay, was it not? Well, no, he was testifying as to what Castile said to Melissa Buhite. I do have a double hearsay issue. No, right, but he did not, Castile, you're right. He was not, he did not hear Castile speak to Melissa Buhite. Correct. So what he was testifying about was what Melissa Buhite told him about what Castile said to her. Correct, Your Honor. So as that statement is classic hearsay, is it not? Both are classic hearsay. No, no, no. Were you trying to get that in to impeach or you were used it to impeach Castile or to... You can, I understand how you can use it to impeach Buhite. We'll get to that in a second. You can't use it to impeach Castile, can you? It's not, it's not admissible for the truth of the matter. No. And it's not a prior inconsistent statement of a witness because the prior inconsistent statement of a witness must be, must be that witness's statement, not the statement of somebody else about what a witness said. But you're denying saying it to... It doesn't matter. It doesn't matter. What's the hearsay exception that allows you to admit Coughlin's testimony to impeach Castile? My opinion is that the best hearsay exception is the 807 residual exception where there are a number of prongs in the, in the law itself, I'm sorry, in the, in the rule itself where... I have it up on my phone. Let me get to it. Yeah. My problem with the residual exception is this. We have an exception devoted to prior inconsistent statements. Yes. And this doesn't fall within it. Well, Your Honor is the one who tells me. No, no. I'm asking, this is in jeopardy. Your answer must be in the form of an answer. Isn't it, it's, it is true that the prior inconsistent statement rule would not, would not allow the admission of Ms. Bukite's statement to impeach Castile? The theory, the reason that I think it should and perhaps... Well, but on its face it doesn't, does it? No, I disagree. Dylan Castile said to us in court under oath that he did not say those... No, but you, in classic hearsay jargon, you have to take as true Jesse's testimony, excuse me, that Melissa said to Jesse what Dylan said to Melissa. My, my request was that the jury be given the option to take it as true or not. Just that we have the benefit of the testimony. Well, that's pretty standard. But in classic hearsay terms, you are admitting for the truth the fact that Melissa said to Jesse what Dylan said to him. The first level, Melissa's at 613, I have no problem with it. But the second level seems to me to be classic hearsay without an exception. The second level being Dylan Castile's statement to Melissa Bukite. Yeah, you have to accept as true that Melissa said to Jesse what Dylan said to Melissa. Yes. Yes, I agree with that. All game. And I, well, I, I think... Well, what I understand you to be saying is, yes, that is hearsay, but it falls under the, the general exception, and there are problems with that. But you're, I understand you to be acknowledging that that second step... Yeah, but classically hearsay. I agree that it's hearsay. I agreed at the district court level that it was hearsay. Both, both are hearsay. Wait, but one of them, the statement to Melissa, if I, or by Melissa, if I have the right person, is a prior and consistent statement that could be used to impeach her. Yes. Hearsay or not. Yes. And the district judge in ruling otherwise, you say was erroneous, and he may well have been. Yes. I'm also asking the court... I'm sorry, what? I was just going to say, I'm asking the court to consider this de novo because I think, I think it's a due process issue. I think it's a constitutional issue, not just an evidentiary ruling. Well, it's, it's not a constitutional issue. It's not a confrontation clause issue. But my client had a right to a fair trial in the absence of Jesse Coffman. Okay, so, but let's just go back. That's, you did, your client did have a right to a fair trial. We're not dealing with a Sixth Amendment question here. The question, the question is whether or not the district court's error, and it really, it doesn't even have to be impeached. I mean, it's just a prior statement of a witness. Whether or not the, that was an error that prejudiced you. Given, given that Bukite wasn't present at the murder. She was present before and after. Correct. And there's four witnesses, three witnesses who testify about the murder. There's blood in your client's car. So my question is, given, if we're looking for prejudice, which it's your burden to show, why would we force a witness to testify  and find prejudice in this case from what I think was the judge's error in not admitting this? What, what I would say is, it was, this testimony of Jesse Coffman, and maybe this is my opinion, but it is my opinion. Maybe it's only my opinion, I should say. But it really seems to me that this witness was crucial to our defense. And he, he came. The witness was crucial not because of some point of, of inconsistency. The witness was crucial, notwithstanding your representations that I just made. And I say that with a small r, because you wanted to get in the substance of your defense. That's true. And, and, and more to the point, I wanted to corroborate my client's version of what happened. There were three cooperating witnesses, all of whom... But this, this witness is a, is a jailhouse... I mean, he's, he, this witness knows nothing about what happened. He wasn't present, that's true. That's right. All this witness knows, for present purposes that make any difference, is what Bukite allegedly told him. Correct. So all he can do with respect to this transaction is impeach Bukite's testimony. Correct. And you want him to also impeach Castile's, but that's a lot harder. Well... I mean, are you, just specifically, and then I have some other questions. Are you trying, is your proposition that we could have used her to impeach Bukite as to what Castile said? Right, because he testified inconsistently. But then you have a double hearsay problem. On the other one, you don't. Right. Even as to what Castile said. In other words, you can impeach Bukite as to what Castile said, but not... All right, so... Go ahead, I'm sorry. So, so then it seems to me there are two other things we need to know. One is, when you talk about, in order to come in as an inconsistent statement, it has to be in conflict. And some of it was in conflict, but a lot of it wasn't. And then you get to the prejudice question. So in order to determine the prejudice question, you'd first have to, we would first have to determine in some detail what could have come in as an inconsistent statement. So what could have come in and what's the prejudice? And let me say one other thing about it. Bukite seems to me to be a fairly peripheral witness. Bukite herself. In terms of impeaching her, she doesn't seem terribly important. The reason that I don't think that's true is she was present in the house after they came back from where the murder occurred. And she saw the interactions between Tio, Mr. Valdivinos, the older Mexican, and my client, Junior, Mr. Valdivinos, the younger Mexican. And that... The entire defense theory is that the power in this relationship shifted that night. And that my client had no interest in murdering this person, played a limited role in murdering this person, and did so under the duress of this Tio character who was trying... But Bukite was not an eyewitness to any of the, to what role he played in the murder. I mean, so her, whatever she's saying is kind of impressionistic in terms of how they related to each other before and afterwards, but not during the actual murder. True. True. The evidence I'm seeking to get in there is that Dillon Castile, though he testified at trial that my client was the boss and called all the shots, including at the location of the murder that night. Right. And she wasn't at the location of the murder. But he later said something different to Melissa Buhite. So I want to return to this. You can only introduce this statement to impeach Bukite. Let's assume you can't get it in against Castile. Okay. And it can't be admitted for the truth of the matter, because it doesn't fit within the for truth of the matter. It wasn't given under oath. So all you can get this statement in for, assuming you can't get it in against Castile, is to impeach Bukite. And so the question is, if you could have impeached Bukite about her description of what happened before and after the murder, would it really make much of a difference in terms of this trial? I understand if you could impeach Castile, that's a different issue. But what Judge Bukite, impeaching Bukite about her recollection of what happened that day. She was kidnapped, she was duct taped, put in a room, and then people came back later and talked about whether to kill her. Whether or not that really makes a difference in this trial. Well, our theory was that the power shift changed that night. And so there was some significant evidence that the older Mexican, Mr. Valdivinos Tio, worked for Mr. Valdivinos, my client, the younger Mexican and junior. Their names are so similar that I have to sort of spell it out. The evidence was consistent, including your own client's testimony, that was the case. Until that night. Indeed, the only evidence is your client's testimony that for some reason, some peculiar development, all of a sudden, this subservient relationship shifted and the uncle became the driving force. That's the theory of the defense, right? Your Honor, I see that my time's up. Can I answer that question? Yes, is the answer to that. However, we had an established motive, opportunity for Tio to talk to the higher ups and make that leapfrog move in the hierarchy. So it wasn't just a speculative theory. We had a lot of different pieces of evidence and they only were able to come in through my client because everybody else had changed their story for the benefit of their sentencing. That's my answer, Your Honor. Okay, thank you very much. May it please the Court and Counsel, good morning. My name is Stephanie Van Marder and I'm the assigned AUSA from this case to the beginning up until now and throughout trial. I want to first address some of the Court's questions as to the admissibility of Mr. Coughlin's testimony and go right to the issue as to whether it was truly impeachment as to an inconsistent statement of Ms. Buchheit. I don't believe the defendant has established it is much of an inconsistent statement. Most of what Mr. Coughlin indicated that Ms. Buchheit told him in a hotel room six months after the murder was not that inconsistent with her own testimony. And some of it was. Very minor parts to it. So those minor parts. Which she was cross-examined on by defense during the course of her testimony. But surely it's admissible it may not be very helpful, but surely it's admissible it's classic evidence rule that when someone is on the stand, extrinsic evidence of her prior statements may be admitted. Not for the truth of the matter, but to impeach her. Well, and I think that although the Court has a good point, the issue that the District Court struggled with, rightfully so, is that this defendant came in and testified before this court after spending time in jail with the defendant. You may have been the world's most unreliable witness, and you may have eviscerated him on cross-examination. I suspect you would have. Jailhouse cellmates are often not very good witnesses. But nonetheless, he said, I had a conversation with a witness, and that witness said things to me inconsistent with what she said on the stand. And so you can argue that it wasn't very important, and therefore there wasn't prejudice, but very important doesn't mean that it's not admissible, does it? But I don't think that they were, I want to address that in two prongs. First, I think the core issue from the Court is the Court had already heard cross-examination of both Mr. Castile and extensive testimony from Ms. Buchheit, and neither of them testified that this conversation occurred. I thought Ms. Buchheit did say that she did meet the guy. Right, but she didn't get into it, because why would she discuss what occurred when they had already threatened to kill her and her family? And that made perfect sense. What I mean is, the Coughlin story was corroborated to the degree that Buchheit did know him and did meet him. Did meet him in a hotel room, but denied ever getting into any details about what occurred, which made sense. But going back to the Court's other inquiry as to inconsistency, I think part of the problem that occurred here is the defendant was muddying statements between what allegedly came from Castile through Buchheit to Coughlin and what actually came from Buchheit. Parts of what he was saying may not have been admissible, but the parts where he said what Buchheit told me, here's what Buchheit told me, he doesn't even have to say it was inconsistent, here's what Buchheit told me, is admissible, is it not? If it were inconsistent, and I don't believe that things... Where does the rule say that it has to be inconsistent to admit a witness's prior statement? 612 says, when examining a witness about the witness's prior statement, a party need not show it or disclose its contents. What 801 says, 803-1 says, is that it's not admissible for the truth of the matter. And that I agree with the Court. But it is admissible to impeach, is it not? Well, in this particular case, without having any additional reliability and having it not actually been materially different than what she testified, I think the Court rightfully was concerned about continuing to muddy this issue of continuing to try and get Castile... Well, she said something about setting him up, which she hadn't said before. Now, let's leave aside from that, but I wanted to get to it next, why any of this matters. But she did say that... That Castile or Coughlin indicated that she was concerned about setting up her boyfriend, which she denied. And so if the Court is considering that as an additional statement, then let's carry that out. How does that have any impact? That if she was cross-examined on that issue, a number of witnesses... Well, that's getting to the prejudice question, so maybe that's where you want to go now. Well, and I think we can certainly go there, but I don't think ultimately had the Court allowed this testimony of Mr. Coughlin, it would have had any impact on the overall case. Before you get to that, because I think it's your strongest argument, you're not suggesting that the judge made a 402 ruling here, a 402-403 ruling, and said it's admissible but its prejudicial value substantially outweighs its probative value. No, I'm suggesting that... But that's what you were just arguing, that's my concern. I apologize. I didn't mean to confuse the two issues. What the Court ultimately found, aside from the fact that it was rank hearsay, that there was absolutely no indicia of reliability. Did not find Mr. Coughlin to be credible in any manner or fashion, and was, I think, concerned about this crossover issue of actually just trying to get this alleged Castile statement in through some things that supposedly Ms. Buchheit provided to Mr. Coughlin when her testimony was fundamentally consistent in the United States' perspective. And this Court was correct that she didn't... First of all, Mr. Coughlin had nothing to do with the material facts of this case. He was not present for anything. Well, more importantly, Ms. Buchheit wasn't present for the murder. She was not present for the murder. Clearly, the kidnapping, being tied up, being present and observing some of the events before and after were impactful and somewhat material in terms of this issue of duress of what she observed. Would you address Judge Berzon's question about prejudice? Because I want to ask you about the duress, but I want to make sure you're finished on this topic. I don't believe that there's any evidence that had the Court... that there was any prejudice suffered by the defendant by failing to present Mr. Coughlin's testimony. The defendant was able to get in all of that defense, as Your Honor pointed out, through other witnesses, through all of the cross-examination, through the testimony of his own client. And Mr. Coughlin, if it was limited simply to what Ms. Buchheit supposedly had said to him, it didn't make a material difference as to the evidence whatsoever. And I don't believe that he can establish prejudice on that prong. Okay. On the duress issue, let me tell you what troubles me. I'm not sure quite how to phrase it. The only defense offered in this case was duress. In other words, Mr. Valdivino said, yeah, I did it. Correct. We did all these things, but I did it under duress. And there's lots of very good arguments in the briefs about why the evidence wasn't sufficient to warrant a duress instruction. But in a murder case where life is the penalty and the only defense, even if it's a bad one, that's offered is the jury under duress. Because just because you have a defense doesn't mean you're automatically entitled to it. You have to meet the legal requirements. Why shouldn't the judge say, here are the legal requirements for duress. I leave it to you, jury, whether or not he's proved those things here. I'll instruct you about the law. You can compare the facts to it. Why in a case like this shouldn't the judge instruct about duress? Let me just put it another way, if I may. Fundamentally, isn't the defendant entitled to a charge to the jury on the theory of his defense? There's evidence to support it, albeit only his own testimony, but so be it. That's not for the judge to be concerned about. It's the jury's realm. That's his defense. Why isn't he entitled to an instruction along with the elements that may essentially blow him out of court in terms of the availability of the defense and fact? Well, first, I have a couple of responses to that, Your Honor. The defendant did get to present his defense extensively to the jury. The judge didn't tell him what the relevance of that defense was. The issue that I have with that is if we are going to accept that promise of an argument, that because a defendant can present something shouldn't he be entitled to the charge, then we've eroded the basic principle that requires him to meet certain elements. That's the reason the law is there. He has to introduce some evidence from which one could derive it. To present it. And the issue in this particular case is that it was so far askew. And the main reason, I gather you would say, or the judge said, is because the last possible threat he's talked about was well before the actual murder. Is that why? Oh, there's a myriad of reasons. I don't think he could establish any of the three prima facie requirements. The immediate threat of death or serious bodily harm. There was no establishment of any immediate threat of any kind. Oh, immediate, that's what I'm saying. He did say that there were some threats earlier, but not at the point that he went and took him out of the car and shot him. No, he couldn't. But let me ask you something. The judge said at one point, and I did think this was the law, but no one's arguing it, that you can't have a duress defense to murder. That is correct. But you're not arguing that. I am not arguing that. Why? Is that not the law? There is that law. Unfortunately, I don't necessarily get to control all of the arguments that are raised before the Ninth Circuit. We did litigate that issue quite extensively before the District Court. Because that seems to me to be what's really, really wrong here. I'd always understood that you don't have a duress defense to murder. Period, the end. Period, the end. What muddied that particular issue was the fact that there was a conspiracy charge in this particular case. And although he initially and continued to deny being present for the murder, in federal murder connected with drug trafficking, you can be convicted of your participation in that murder, not by necessarily pulling the trigger, but by also facilitating it, by encouraging it. That's true. Then maybe he did have a duress defense, not only theoretically, but also because then the relevant point at which the duress becomes relevant is a different point. In other words, if he was subject to duress in joining the conspiracy, and he could have been held guilty only for conspiracy, do we know if he was? Well, he actually acknowledged that he was not. There was no duress in joining the conspiracy. He testified at length to being a willing member of the cartel, that he was in control of facilitating... I'm not talking about that. I'm talking about the conspiracy to murder. He was not charged with conspiracy to murder. He was charged to conspiracy to distribute and murder in connection with that drug conspiracy. Part of what was fettered out before the district court is there is somewhat of a split amongst... But the murder could have been part of a conspiracy rather than him doing it himself. We didn't charge conspiracy to commit the murder. We simply charged the murder as it related to the drug conspiracy. The murder connected to the drug conspiracy was in part moted by the fact of the drug conspiracy itself as well as other motives which is authorized by the law. His only duress defense was to the murder portion. Then we're back where we started from. Why isn't the answer simply that there is no duress defense? Because I think that there was a concern and split amongst the circuits about how you handle some of that issue when there's alternative means with which you can commit the murder under federal law. You don't actually have to be... You just said there wasn't in this instance. I'm very confused. At any event, you agree that we can't decide it on that basis because it's not before us. It's not before the court, no. I appreciate the court raising that issue. It was something that was of concern to me during the litigation process of this. Okay. You've used your time. Thank you very much. Sir? I don't know if you have time left. I don't, Judge. I have one statement. We did not offer the duress defense to the committing the murder. We offered the duress defense to his driving the murderer and the decedent to the location where he was murdered. Oh, I see. I don't want to extend this too much, but does that matter? If you're charged with murder in connection with a drug conspiracy and there's no doubt a drug conspiracy was going on and your client was part of it and he says, well, I was... I didn't drive him there. I was under duress to drive him there. Correct. But there is substantial testimony that he actually committed the murder. He denies that. Correct. He doesn't say I committed the murder under duress because he denies committing it. And that is what is not permitted under law. You can't say I committed the murder under duress. My point is that even if he drove there under duress since he agrees that he went to the everything else that happened beforehand happened. Yes. Why would a duress in driving be a defense to the murder? What I argued below and what I think is true now is he had to explain why he drove there. Otherwise you're part of the murder. But again, it wasn't charged as a conspiracy. It's charged as a murder. No, but my problem is it's murder in relation to a drug conspiracy, right? So let's say you have a drug conspiracy. You kidnap a guy. The conspirators take him to the house. Let's assume somebody else drives and they decide to murder him. Somebody else drives a guy off and murders him and your guy remains at the house. He's still guilty, is he not? No. If he stayed at the house and didn't participate in the murder at all... Because it's a murder related to a drug conspiracy. He's not... He's charged with being involved in a murder relating... Aiding and abetting. He doesn't have to commit it himself. We talked a lot about that below and since the court's asking me, if you read the statute of murder in connection with the drug conspiracy, it includes the concept of... Oh, gosh. Well, we'll look at it. I just raised the issue. I hope it's in the record. I'll look at the statute. Okay. Thank you both very much. The case of United States v. Valdivinos will be submitted.
judges: Berzon, Hurwitz, Dearie